IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MEGAN KELLY GRAMAN, *et al.*,

    Plaintiffs,

v.                                                                                         CIVIL ACTION NO. 2:24-cv-356

CITY OF SUFFOLK, VIRGINIA, *et al.*,

    Defendants.

## *MEMORANDUM OPINION AND ORDER*

Before the Court are the City of Suffolk, Virginia ("Suffolk Police Department") and Former Police Chief Alfred S. Chandler's ("Chandler"), and Sergeant Casey Thomas's ("Thomas") (collectively, "Defendants") Motions to Dismiss Plaintiffs' Complaint for Failure to State a Claim. ECF Nos. 15, 16, 20, 21 ("Motions"). Megan Kelly Graman ("Graman"), Lauren Ashley Callis ("Callis"), Alissa Kiera Etters ("Etters"), and L.C.P. ("L.C.P.") (collectively, "Plaintiffs") oppose the motions. ECF Nos. 22, 25. The Court has considered the memoranda of the parties, and this matter is now ripe for judicial determination. Upon review, the Court finds that a hearing on these Motions is not necessary. *See* Va. Local Civ. R. 7(J). For the reasons stated herein, Defendants' Motions to Dismiss are **GRANTED**.[1]

                        **I.    FACTUAL AND PROCEDURAL HISTORY**

Relevant to Defendants' Motions to Dismiss and stated in the light most favorable to Plaintiffs, the following facts are drawn from the Complaint and the attachments thereto. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

---

[1] Thomas's Memorandum in Support of her Motion to Dismiss raises a statute of limitations defense for conduct occurring before June 1, 2022, and a qualified immunity defense for Claims One through Four. ECF No. 21 at 8, 16. In view of the Court's determination that Plaintiffs have failed to state a claim upon which relief can be granted, the Court finds it unnecessary to address these defenses.

1

In 2014, Graman and Callis were in high school with Thomas Cervantes ("Cervantes"). Compl. at ¶ 13. Both Graman and Callis engaged in romantic and sexual relationships with Cervantes during high school. *Id.* On February 22, 2021, a Snapchat user, who eventually turned out to be Cervantes, sent Callis explicit images of herself from when she was a minor. *Id.* at ¶ 15. Callis's father, who worked for the Suffolk Police Department, helped Callis file a police report. *Id.* at ¶ 16. Defendant Thomas spoke with Callis about the report. *Id.*

On March 1, 2021, Graman received a text from a fake phone number asking her to add Cervantes on Snapchat. *Id.* at ¶ 17. Callis updated Thomas of this attempt, and Thomas took control of the investigation. *Id.* at ¶ 18. Cervantes contacted several other girls, and Callis provided Thomas with their information, but allegedly Thomas never contacted any of the other girls. *Id.* at ¶¶ 18–19. One of the girls determined the IP address and physical address of the computer where the account was based, and Callis sent the IP address to Thomas. *Id.* at ¶ 20. On March 8, 2021, Graman and Callis met with Thomas and Thomas advised that she would send out warrants to Snapchat to determine who was sending the messages. *Id.* at ¶ 22. Thomas gave Graman and Callis a business card and told them to email her the evidence they had. *Id.* During this meeting, Graman and Callis informed Thomas that Cervantes had direct access to underage girls through his extended family, including Plaintiffs L.C.P. and Etters. *Id.*

Graman and Callis sent sensitive information, including underage sexually explicit photos of Callis, to the email on the business card. *Id.* at ¶ 23. According to Plaintiffs, Thomas purposely gave Callis the email address of the Suffolk Police Department recruiter, who is a male that was not associated with the matter. *Id.* The recruiter informed Callis's father of the incident, and the father informed former Chief of Police, Alfred S. Chandler ("Chandler"). *Id.* at ¶¶ 24–25. Allegedly, Chandler took no action to correct Thomas's behavior and did not re-assign the case.

2

*Id.* at ¶ 25.

Between March and April 2021, Thomas ignored Callis's attempts to receive updates on the investigation. *Id.* at ¶ 26. Thomas advised Graman and Callis that her subpoenas were denied and needed to be resubmitted. *Id.* On June 1, 2021, Thomas met with Graman and Callis, and during that meeting Thomas allegedly subjected Graman and Callis to numerous nude images of underage girls. *Id.* at ¶ 27. Thomas also played audio of a rape video of a young child. *Id.* Accordingly to Graman and Callis, Thomas spoke to them in a snide and unforgiving manner while showing them the images and playing the audio. *Id.* Graman and Callis allege that this behavior is completely against practice and procedure for treatment of victims. *Id.* at ¶ 28. Later, Thomas showed Graman and Callis a list of Snapchat and Instagram usernames uncovered during the investigation, and Graman and Callis identified some of them as aliases Cervantes used. *Id.* at ¶ 29.

Graman and Callis did not hear from Thomas in July and August 2021. *Id.* at ¶ 32. On September 20, 2021, Thomas told Graman and Callis that Cervantes was not involved in the messaging and indicated that she would not investigate Cervantes further. *Id.* at ¶ 34. On December 6, 2021, Graman and Callis contacted the Norfolk FBI headquarters to report Cervantes and inform the FBI that the Suffolk investigation had stalled. *Id.* at ¶ 35. On February 3, 2022, Graman and Callis reached out to Thomas and received no response. *Id.* at ¶ 36. The next day, they called Chandler and received no response. *Id.* at ¶ 37. On June 2, 2022, Thomas left Graman and Callis voicemails telling them their case was close because the requested warrants were never returned. *Id.* at ¶ 39. Following this incident, Graman was diagnosed with post-traumatic stress disorder and Callis was diagnosed with anxiety and depression. *Id.* at ¶ 41.

3

On July 13, 2023, Graman and Callis learned that Cervantes was arrested for producing and distributing child pornography. *Id.* at ¶ 42. An FBI agent informed Graman that she was able to charge Cervantes from reports that Elizabeth Curtis's underage daughters, Etters and L.C.P., were Cervantes's victims. *Id.* at ¶ 43. Throughout 2022, Cervantes groomed, harassed, and sexually exploited L.C.P. and Etters who were both minors. *Id.* at ¶ 44. Cervantes pled guilty to production of child pornography and was sentenced to 30 years' imprisonment. *Id.* at ¶ 52. Allegedly, a significant portion of the child pornography Cervantes produced occurred in 2022, after Thomas and the Suffolk Police Department possessed the subpoena linking Cervantes to the Snapchat exploitation of minors and after Thomas closed the investigation. *Id.* Plaintiffs L.C.P. and Etters allege that they were sexually exploited by Cervantes after Thomas closed the investigation. *Id.* Allegedly, Defendants increased the danger to L.C.P. and Etters by suppressing and concealing evidence of his crimes, hindering the FBI's investigation, and closing their investigation despite evidence linking Cervantes to the crimes. *Id.* at ¶¶ 79–80.

On June 1, 2024, Plaintiffs filed the instant Complaint. ECF No. 1. On July 1, 2024, Defendants Chandler and Suffolk Police Department filed a Motion to Dismiss for Failure to State a Claim and a Memorandum in Support. ECF Nos. 15, 16. On July 12, 2024, Defendant Thomas filed a Motion to Dismiss for Failure to State a Claim and a Memorandum in Support. ECF Nos. 20, 21. On July 15, 2024, Plaintiffs filed a Motion in Opposition to Chandler and Suffolk Police Department's Motion to Dismiss. ECF No. 22. Chandler and Suffolk Police Department replied on July 22, 2024. ECF No. 23. On July 26, 2024, Plaintiffs filed a Motion in Opposition to Thomas's Motion to Dismiss. ECF No. 25. On August 1, 2024, Thomas replied. ECF No. 26.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. For the purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Federal Rule of Civil Procedure 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007) (quotations omitted). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *Id.* at 570. This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertion[s] . . . without some further factual

enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation omitted).

### III. DISCUSSION

Defendants Suffolk Police Department and Chandler argue that the Complaint should be dismissed in its entirety. ECF No. 16. They first argue that no individual has a constitutional right to investigation or prosecution of criminal complaints. *Id.* at 4. Suffolk Police Department and Chandler further argue that each of Plaintiffs' five Claims should be dismissed because they fail to state a claim for which relief can be granted. *See id.* Defendant Thomas argues that Plaintiffs do not plausibly allege Claims One through Five. ECF No. 21.

In Claims One and Two of the Complaint, Plaintiffs Graman, Callis, L.C.P., and Etters allege that Defendants violated their due process rights by engaging in conduct which shocks the conscience. Thus, the Court will combine the analyses of Claims One and Two. "[A] plaintiff asserting a § 1983 substantive due process claim must allege both the deprivation of his life, liberty[,] or property interest by a state actor, and that the deprivation of this interest was 'arbitrary in the constitutional sense.'" *Callahan v. N. Carolina Dep't of Pub. Safety*, 18 F.4th 142, 145 (4th Cir. 2021) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992). A deprivation is arbitrary in the constitutional sense if it "shocks the conscience." *Cnty. Of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Plaintiffs have failed to allege the deprivation of a life, liberty, or property interest. Thus, the Court will not address whether Defendants' conduct was conscience-shocking.

#### A. Claims One and Two: Violation of Plaintiffs' Due Process Rights by Conduct Which Shocks the Conscience

Graman and Callis allege that Defendants Suffolk Police Department, Thomas, and Chandler violated their Due Process rights by engaging in conduct that shocks the conscience.

6

Specifically, they argue that Thomas purposely gave Graman and Callis the email address of a male recruiter unaffiliated with the investigation to humiliate them when they sent him sexually explicit materials to the male. Compl. at ¶ 56. Graman and Callis argue that Thomas knew that Callis was the daughter of a Suffolk Police Department officer and sought to embarrass her. *Id.* They further argue that, after learning of Thomas's actions through Callis's father, Chandler expressed no concern and took no action to correct Thomas's inappropriate behavior and did not assign a new officer to the case. *Id.* at ¶ 25. They argue that by doing nothing, Chandler displayed "deliberate indifference" to the harm Callis and Graman faced at the hands of Thomas. *Id.* at ¶ 57. Allegedly, the harm came when Thomas forced Callis and Graman to review nude photographs of minor girls and listen to audio of a child being raped. *Id.* at ¶ 58.

L.C.P. and Etters also allege that Defendants Suffolk Police Department, Thomas, and Chandler violated their Due Process rights by engaging in conduct that shocks the conscience. They allege that throughout the course of the Cervantes investigation, Thomas became aware of the danger L.C.P. and Etters faced through testimony, photographs, and videos. Compl. at ¶ 67. Allegedly, Thomas directly informed Cervantes that he was being investigated. *Id.* at ¶ 68. They also allege that Defendants actively hindered the FBI investigation by not providing the FBI with evidence they collected against Cervantes. *Id.* at ¶ 70.

Section 1983 of Title 42 of the United States Code imposes liability on state actors who cause "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. The Fourteenth Amendment's Due Process Clause protects individuals from state actors that would "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. The Supreme Court has interpreted that Clause to provide substantive rights "which protect[] individual liberty against certain government actions regardless of the

fairness of the procedures used to implement them." *Callahan*, 18 F.4th at 145 (4th Cir. 2021) (quoting *Collins*, 503 U.S. at 125). As noted above, "a plaintiff asserting a § 1983 substantive due process claim must allege *both* the deprivation of his life, liberty[,] or property interest by a state actor, and that the deprivation of this interest was 'arbitrary in the constitutional sense.'" *Id.* (citing *Collins*, 503 U.S. at 129) (emphasis added).

But the Supreme Court and the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") have cautioned against "constitutionalizing" state tort law through the Due Process Clause. *Callahan*, 18 F.4th at 145 (citing *Collins*, 503 U.S. at 128). "[W]here a claim sounds both in state tort law and substantive due process, state tort law is the rule and due process the distinct exception." *Waybright v. Frederick Cnty., MD*, 528 F.3d 199, 205 (4th Cir. 2008). The presumption that § 1983 due process claims which overlap with state tort law should be rejected can be rebutted by behavior that "shocks the conscience." *Id.* (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. at 845–46).

This rebuttable presumption can only be applied where plaintiffs have alleged the deprivation of a life, liberty, or property interest by a state actor. *Callahan* 18 F.4th at 145. Plaintiffs have failed to do so. Plaintiffs specifically allege that Defendants' conduct deprived them of the "right to enjoyment of life." Compl. at ¶ 62, 63, 72, 73. Depriving a plaintiff of the "right to enjoyment of life" is fundamentally different than depriving a plaintiff of life. Stated differently, unlike the plaintiff in *Dean*, Plaintiffs did not demonstrate "deliberate indifference to [Plaintiffs'] life and safety." *Dean for and on Behalf of Harkness v. McKinney*, 976 F.3d 407 (4th Cir. 2020) (affirming the district court's finding that a reasonable jury could conclude the defendant violated the plaintiff's substantive due process rights where he traveled at excessive speeds, colliding with the plaintiff and causing serious bodily injury). Further, Plaintiffs allege no threat of injury or

8

injury to their physical health or safety. *See Callahan*, 18 F.4th 142; *See also Dean*, 976 F.3d 407.

The Court is not persuaded by Plaintiffs' suggestion that Defendants' conduct constitutes a deprivation of life. Plaintiffs do not allege a deprivation of a liberty or property interest either. *See* Compl. The facts alleged in this case might well support state tort claims or other state law claims. *Slaughter v. Mayor and City Council of Baltimore*, 682 F.3d 317, 323 (4th Cir. 2012). Indeed, Plaintiffs allege "severe emotional and mental distress," "mortification," and "great personal trauma, stress, fear and injury to their good name and reputation." Compl. at ¶¶ 63, 73. But in the absence of facts that establish that Defendants plausibly deprived Plaintiffs of a life, liberty, or property interest, the Court declines to constitutionalize a state tort claim. *Callahan*, 18 F. 4th at 149. Therefore, Claims One and Two fail.

### B. Claim Three: Violation of Plaintiffs L.C.P. and Etters's Due Process Rights by State-Created Danger

L.C.P. and Etters argue that Defendants Suffolk Police Department, Thomas, and Chandler violated their Due Process rights by increasing the danger L.C.P. and Etters faced from Cervantes. Compl. at ¶ 79. L.C.P. and Etters further argue that Defendants did so by suppressing evidence of his crimes, hindering FBI investigations, and closing its investigation despite evidence linking Cervantes to crimes against minor girls. *Id.*

The Supreme Court of the United States developed the state-created danger doctrine in *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989). The Court stated that purpose of the Due Process Clause of the Fourteenth Amendment is "to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196. Generally, a state may not be liable for a victim's injuries where the state is aware of the dangers a victim faces, but plays "no part in their creation," nor does "anything to render [the victim] any more vulnerable to them." *Id.* at 201. The state-created danger doctrine "is a 'narrow' exception to the general rule

9

that state actors are not liable for harm caused by third parties." *Graves v. Lioi*, 930 F.3d 307, 319 (4th Cir. 2019) (citing *Doe v. Rosa*, 795 F.3d 429, 437 (4th Cir. 2015).

The Fourth Circuit's discussion in *Pinder v. Johnson*, 54 F.3d 1169 (4th Cir. 1995) "is widely acknowledged as the seminal case in this circuit on the theory." *Robinson v. Lioi*, 536 F. App'x 340, 343 (4th Cir. 2013). There, the Fourth Circuit held that "[w]hen the state itself creates the dangerous situation that resulted in a victim's injury… the state is not merely accused of a failure to act; it becomes much more akin to an actor itself directly causing harm to the injured party." *Pinder*, 54 F.3d at 1177. To prevail on a § 1983 claim under a state-created danger theory, "a plaintiff must show that the state actor created or increased the risk of private danger, and did so directly through affirmative acts, not merely through inaction or omissions." *Turner v. Thomas*, 930 F.3d 640, 645 (4th Cir. 2019) (quoting *Doe*, 795 F.3d at 439 (4th Cir. 2015)). The "affirmative act" requirement is also limited—"[i]t cannot be that the state commits an affirmative act or creates a danger every time it does anything that makes injury at the hands of a third party more likely. If so, the state would be liable for every crime" a perpetrator commits. *Graves v. Lioi*, 930 F.3d at 319 (quoting *Pinder*, 54 F.3d at 1175).

Here, Plaintiffs L.C.P. and Etters allege that "[a] significant portion of the child pornography Cervantes produced occurred in 2022, after Thomas and Suffolk Police Department possessed the subpoena linking Cervantes to the Snapchat exploitation of minors and after Thomas closed her investigation. Compl. at ¶ 52. They further allege that Defendants increased the danger to L.C.P. and Etters by suppressing evidence of his active crimes, hindering the FBI's investigation of Cervantes, and closing the investigation "despite irrefutable evidence linking Cervantes to the crimes he was actively committing against minor girls." *Id.* at ¶ 79.

L.C.P. and Etters' state-created danger claim does not pass muster. The Fourth Circuit's

10

discussion in *Pinder* is instructive. In *Pinder*, the Fourth Circuit determined that a plaintiff brought merely an omission claim that did not violate Due Process. 54 F.3d at 1176. The Plaintiff there argued that a police officer affirmatively acted and enhanced the danger posed by her ex-boyfriend when the officer assured her that the boyfriend would be incarcerated overnight, but ultimately charged the ex-boyfriend with a lesser offense that allowed for his immediate release. *Id.* at 1172. The court rejected this argument, reasoning that "[b]y this measure, every representation by the police and every failure to incarcerate" would be an affirmative act giving rise to civil liability.

Here, L.C.P. and Etters argue that Defendants affirmatively acted. But "[n]o amount of semantics can disguise the fact that the real 'affirmative act' here was committed by" Cervantes, not Defendants. *Pinder*, 54 F.3d at 1175. Cervantes endangered Plaintiffs L.C.P. and Etters. The state did not create the danger, it failed to provide adequate protection from it. *Id.* This means that, "at most, the state actors 'stood by and did nothing when suspicious circumstances dictated a more active role.'" *Graves v. Lioi*, 930 F.3d at 327 (quoting *Pinder*, 54 F.3d at 1175).

Another helpful example comes from a recent decision in this District. In *Paton v. City of Norfolk, Virginia*, the Court rejected the plaintiff's state-created danger claim where plaintiff alleged that defendants destroyed and concealed evidence. 2024 WL 4523819 at *6 (E.D. Va. September 5, 2024). The Court noted that "[t]here must be immediate interactions between the state actor and the plaintiff that evince a sufficient causal connection, or nexus, between the state action and the alleged harm." *Id.* (citing *Doe v. Rosa*, 795 F.3d at 441; *Callahan* 18 F.4th 142, 148 (4th Cir. 2021)).

There is no such interaction here. The harm L.C.P. and Etters allege is their sexual exploitation. Compl. at ¶ 80. Cervantes caused that harm. *Id.* The Complaint is devoid of any alleged interactions between Defendants and L.C.P. and Etters. Instead, the complaint alleges a

11

"'downstream, but-for connection' between the state's conduct and the alleged harm" that does not support a state-created danger claim. *Callahan*, 18 F.4th at 147 (citing *Doe v. Rosa*, 795 F.3d at 442).

Stated differently, "the police did nothing to enhance an already-extant danger" that Plaintiffs would be harmed by Cervantes. *Sloane v. Kanawha Cnty. Sheriff Dep't*, 342 F. Supp. 2d 545 (S.D.W. Va. 2004). Cervantes was, by Plaintiffs' own admission, a known danger to the community. The Court does not dispute that Defendants could have, and perhaps should have, done more to protect Plaintiffs L.C.P. and Etters. Indeed, Cervantes allegedly produced child pornography in 2022, after the Suffolk Police Department closed its investigation. But the state-created danger doctrine requires more than proof of mere negligence or that Defendants could have done more to ensure Cervantes was arrested earlier. *Graves v. Lioi*, 930 F.3d at 321. Like the police behavior in *Pinder*, their failure to incarcerate Cervantes sooner cannot constitute an affirmative act giving rise to civil liability. Thus, Claim Three fails.

### C. Claim Four: Violation of Plaintiffs Graman and Callis's Equal Protection Rights

Graman and Callis argue that Defendants Suffolk Police Department, Thomas, and Chandler violated their Equal Protection rights. Specifically, Graman and Callis allege that Thomas intentionally treated them differently than other similarly situated victims on the basis of sex. Compl. at ¶ 85. Graman and Callis further argue that, when the victim is a male, Suffolk Police Department does not force male victims to send sexually explicit photographs to members of the department that are unassociated with the investigation, does not force victims to view sexually explicit content, and does not suppress evidence of a male victim's perpetrator. *Id.* at ¶ 87–89.

The Fourth Circuit has held "[t]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated

12

and that the unequal treatment was the result of intentional or purposeful discrimination." *King v. Rubenstein*, 825 F.3d 206, 220 (4th Cir. 2016) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). If a plaintiff demonstrates disparate treatment, the Court then considers "whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.*

Plaintiffs Graman and Callis's claim that Defendants violated their equal protection rights during the investigation is tenuous. Graman and Callis's claim fails because they have not "attempted to identify any better-treated individuals similarly situated to [them], nor [have they] brought to the court any evidence suggesting such individuals might exist." *English v. Clarke*, 90 F.4th 636, 649 (4th Cir. 2024); *Desper v. Sanders*, 2024 WL 712535, at *5 (E.D. Va. Feb. 21, 2024). Graman and Callis have failed to offer any instances of similarly situated male victims whose cases were taken more seriously or investigated differently because they were men. They merely assert that this discrimination happens within the department, without any factual enhancement. *See Twombly*, 550 U.S. at 557. Therefore, Claim Four fails. *Id.*

### D. Claim Five: Failure to Train Asserted by Plaintiffs L.C.P. and Etters Against City of Suffolk and Police Chief Chandler

Plaintiffs L.C.P. and Etters allege that Suffolk Police Department and Police Chief Chandler should be liable under 42 U.S.C. § 1983 for failure to train their subordinates. Specifically, L.C.P. and Etters allege that they had a right to be reasonably protected from Cervantes under 18 U.S.C. § 3771. Compl. at ¶ 96. They argue that Thomas had knowledge of Cervantes's crimes and, despite this knowledge, failed to take any action to protect them from Cervantes. *Id.* at ¶ 97. L.C.P. and Etters argue that Chandler failed to train his police officers about the protections of 18 U.S.C. § 3771 and that this led to a deprivation of their federal rights. *Id.* at ¶¶ 98, 100.

The Supreme Court has noted that failure to train liability is narrow: "[a] Municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985) (plurality opinion). To prevail on a failure to train claim, a plaintiff must prove:

> "(1) [that] the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) [that] the supervisor failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) [that] this failure to train actually caused the subordinates to violate the plaintiff's rights."

*Gallimore v. Henrico Cnty. Sch. Bd.*, 38 F. Supp. 3d 721, 726 (E.D. Va. 2014) (quoting *Brown v. Mitchell*, 308 F.Supp.2d 682, 701 (E.D. Va. 2004)).

L.C.P. and Etters sufficiently allege that Thomas actually violated their statutory rights under 18 U.S.C. § 3771. The statute provides that "[a] crime victim has the following rights: (1) The right to be reasonably protected from the accused." 18 U.S.C. § 3771(a)(1). Allegedly, Graman and Callis informed Thomas that Cervantes had access to underage girls including L.C.P. and Etters. Compl. at ¶ 22. Thomas allegedly "strongly indicated" that she would not be investigating Cervantes further. *Id.* at ¶ 34. She left Graman and Callis an email notifying them that there were no more leads to follow and there was nothing more she could do. *Id.* at ¶ 39. As outlined above, the Court does not dispute that Defendants could have done more to protect L.C.P. and Etters. By failing to reasonably protect L.C.P. and Etters, Defendants have violated their statutory rights under 18 U.S.C. § 3771. Thus, the Complaint contains sufficient allegations to establish the first element of a failure to train claim.

Next, the Court turns to whether Plaintiffs have alleged a failure to train that illustrates deliberate indifference. Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Bd. of Cnty.*

*Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). To avoid dismissal under Rule 12(b)(6), a plaintiff need not identify in detail the exact training policies in effect, or lack thereof, at the time of the events in question. *Newbrough v. Piedmont Regional Jail Authority*, 822 F.Supp.2d 558, 583 (E.D. Va. 2011). But "the plaintiff must allege facts that "reveal an 'obvious' need for improved personnel training." *Lee v. City of Richmond, Va.*, 2013 WL 115590 (E.D. Va. Mar. 19, 2013) (citing *Newbrough*, 822 F.Supp.2d at 583 (E.D. Va. 2011)).

The Supreme Court has noted that allegations of inadequate training must focus on "a deficient training 'program,' necessarily intended to apply over time to multiple employees." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl.*, 520 U.S. at 407. Policymakers can be on notice and exercise deliberate indifference (1) where there is evidence of a pattern of constitutional violations, or (2) where, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations. *Id.* at 410.

There are two issues with L.C.P. and Etters's claim that Chandler, and thus Suffolk Police Department, should be liable for failure to train. First, L.C.P. and Etters have only alleged facts to suggest that Thomas was inadequately trained. Indeed, they only allege that Thomas's training log contains no training or instruction regarding 18 U.S.C. § 3771. Compl. at ¶ 99. They allege that Chandler's failure to train Thomas resulted in the deprivation of L.C.P. and Etters's federal rights. *Id.* at ¶ 100. Evidence of a particular officer's inadequate training "will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390–91 (1989) (internal citations omitted). Because evidence of Thomas's deficient training cannot attribute deficient training to the entire department, "this allegation is insufficient to establish any specific

15

deficiencies in [Suffolk's] training regimen." *Willis v. Blevins*, 966 F. Supp. 2d 646, 666 n.9 (E.D. Va. 2013).

L.C.P. and Etters do allege that Chandler failed to train his officers despite being aware that the officers would interact with victims of federal crimes. Compl. at ¶ 98. But they do not allege any facts sufficient to support that conclusion. In fact, Plaintiffs Graman and Callis's equal protection and due process arguments directly conflict with L.C.P. and Etters's failure to train argument. Graman and Callis allege that when presented with similar allegations from males, Suffolk Police Department investigates them seriously and protects them from harm. *Id.* at ¶ 86. Graman and Callis argue that Thomas intentionally treated them differently from other similarly situated victims. *Id.* at ¶ 85. Lastly, they argue that Thomas's actions directly violated protocol and procedure regarding investigations into sex crimes and treatment of victims. *Id.* at ¶ 58. These allegations suggest that a particular officer, Thomas, was inadequately trained—it does not establish any specific deficiencies in Suffolk's training regimen. *Willis*, 966 F. Supp. 2d at 666 n.9. As a result, Claim Five fails.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are **GRANTED**. ECF Nos. 15, 20. Plaintiffs' Complaint is **DISMISSED**. ECF No. 1.

The Court **DIRECTS** the Clerk to provide a copy of this Memorandum Opinion and Order to the parties.

IT IS SO **ORDERED**.

Norfolk, Virginia
December 1*b*, 2024

Raymond A. Jackson
United States District Judge